**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

MONIQUE L. HIBBS                                                              CIVIL ACTION

VERSUS                                                                                   17-615-SDD-RLB

WELLS FARGO BANK, N.A.

**RULING**

Before the Court is a *Motion for Judgment on the Pleadings*[1] filed by Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"). Plaintiff Monique L. Hibbs ("Plaintiff" or "Hibbs") filed an *Opposition*,[2] to which Defendant filed a *Reply*.[3] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. Oral argument is unnecessary. For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.

**I. BACKGROUND AND ARGUMENT**

    **A. Factual Allegations**

Plaintiff is the owner of land and improvements located at 13527 Arnold Road in Walker, Louisiana, her personal residence.[4] On May 12, 2006, Plaintiff alleges that she executed a promissory note in favor of and granted a mortgage to American Mortgage, Inc.[5] In 2007, Plaintiff claims that Defendant purchased the promissory note and mortgage on the property securing the note.[6] In 2009, Plaintiff claims that she applied for refinancing with Defendant, and the Parties entered into a Loan Modification Agreement.[7]

---

[1] Rec. Doc. 28.
[2] Rec. Doc. 30.
[3] Rec. Doc. 34.
[4] Rec. Doc. 9, p. 2, ¶ 4.
[5] Rec. Doc. 9, p. 2, ¶ 5.
[6] Rec. Doc. 9, p. 2, ¶ 6.
[7] Rec. Doc. 9, p. 2, ¶¶ 7-8.
52240

Plaintiff claims that the Loan Modification Agreement was executed and came into effect on January 29, 2011.[8]

Prior to this time, Plaintiff alleges that she "had been paying" her "wind, homeowner's, and flood insurance out of her own pocket."[9] Plaintiff claims that, as a "condition to the Loan Modification Agreement," Defendant required her to pay into an escrow account an amount "sufficient to pay wind, homeowner's, and flood insurance, among other charges."[10] Plaintiff claims that she paid increased monthly installments on her mortgage debt to be deposited into an escrow account to pay these insurance premiums.[11]

Plaintiff's property sustained flooding in the "Great Flood" of August 2016. On the day of flooding, Plaintiff allegedly contacted Defendant to initiate a claim "with her flood insurer."[12] Defendant allegedly told Plaintiff that she did not have any flood insurance.[13] Plaintiff claims that Defendant cancelled or allowed her prior flood insurance policy to lapse and failed to obtain other flood insurance coverage for her property.[14] Plaintiff further claims that Defendant purchased two wind insurance policies and paid the monthly premiums out of her escrow account without disclosing same to her.[15] In October of 2016, Defendant allegedly notified Plaintiff that it had obtained a policy of flood insurance for her property retroactive to July 26, 2016. American Security, the purported flood insurer,

---

[8] Rec. Doc. 9, p. 2, ¶ 9.
[9] Rec. Doc. No. 9, p. 2, ¶ 10.
[10] Rec. Doc. No. 9, pp. 2-3, ¶ 11.
[11] Rec. Doc. No. 9, p. 3, ¶ 12.
[12] Rec. Doc. No. 9, p. 3, ¶¶ 13-14.
[13] Rec. Doc. No. 9, p. 3, ¶15.
[14] Rec. Doc. No. 9, pp. 3-4, ¶¶ 16-17.
[15] Rec. Doc. No. 9, p. 4, ¶ 18.
52240

issued payment in September of 2016 in the amount of $65,000.00 for flood property loss, which Plaintiff claims Defendant has "refused" to release.[16]

Plaintiff claims Defendant informed her, "for the first time" after August of 2016, that Defendant deducted an "excessive amount of fees and costs" from her monthly mortgage payments without "justification" or "disclosure." Also, Plaintiff alleges that "since the finalization of the Loan Modification Agreement in 2011," Defendant has failed to furnish Plaintiff with monthly mortgage statements and escrow statements until September of 2016.[17]

This matter involves claims related to "lender-placed insurance" or "force-placed insurance," which has been the subject of a growing body of litigation.[18]

### B. Procedural Background

The original *Complaint* alleged claims of fraud, conversion, breach of contract and unfair and deceptive trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA").[19] In response to Defendant's first *Motion to Dismiss*,[20] Plaintiff timely amended the *Complaint*[21] within twenty-one days after service and without leave of court.[22] Plaintiff "did not incorporate any of the allegations of the original petition,"[23]

---

[16] Rec. Doc. No. 9, pp. 4-5, ¶¶ 21, 23-24.
[17] Rec. Doc. No. 9, p. 5, ¶¶ 27-28.
[18] *See Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed.Appx. 861 (5th Cir. 2013); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed.Appx. 200 (5th Cir. 2012); *Woodside v. Pacific Union Financial, LLC*, 2018 WL 1419349 (E.D. La. Mar. 22, 2018); and *Shamrock Assoc. Ind., L.L.C. v. Fidelity Nat. Prop. and Cas. Ins. Co.*, 2006 WL 6927866 (E.D. La. Nov. 2, 2006).
[19] Rec. Doc. 1-1.
[20] Rec. Doc. 5-1.
[21] Rec. Doc. 9.
[22] Rec. Doc. 10, pp. 1-2.
[23] Rec. Doc. 10, p. 1.

52240

thereby superseding the original petition.[24] In the *First Amended Complaint*, Plaintiff added claims of violations of the Truth in Lending Act ("TILA"),[25] intentionally eliminated claims of fraud and the LUTPA,[26] and maintained her claim of breach of contract.[27]

Defendant then urged a second *Motion to Dismiss* solely directed at Plaintiff's claims under TILA.[28] The Court granted Defendant's second motion and dismissed Plaintiff's TILA claim.[29] Plaintiff's breach of contract claim remained pending.

Because Plaintiff stated in her opposition to Defendant's second motion to dismiss that she was also asserting causes of action for breach of contract, "unreasonable withholding from insurance payments made by the flood insurer", and personal injury claims,[30] Defendant filed the instant motion. Defendant's instant motion seeks to target Plaintiff's remaining claim of breach of contract and address Plaintiff's statement of purported claims of "unreasonable withholding from insurance payments" and personal injury claims. Defendant argues that Plaintiff fails to state a claim upon which relief may be granted.

**C. Parties' Arguments**

1. <u>Defendant's motion</u>

Defendant's argument is based upon the terms of the Mortgage Loan Agreement.[31] Specifically, Defendant argues that, since Plaintiff did not provide Defendant with proof of

---

[24] Rec. Doc. 10, p. 3 (citing *King v. Dogan*, 31 F.3d 344 (5th Cir. 1994); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).
[25] Rec. Doc. 9.
[26] Rec. Doc. 10, p. 2.
[27] *Id.*; Rec. Doc. 9.
[28] Rec. Doc. 19.
[29] Rec. Doc. 26.
[30] Rec. Doc. 23, p. 2.
[31] Rec. Doc. No. 28-2.
52240

insurance coverage, Defendant exercised its right to procure insurance to protect Defendant's interest in the property at Plaintiff's expense. Defendant argues that it was not obligated to procure particular types of insurance or a certain amount of coverage. Defendant further argues that, because it acted within the terms of the mortgage agreement at all times, Plaintiff fails to state a claim upon which relief may be granted.[32]

Defendant also argues that Plaintiff has not specifically alleged a cause of action for breach of contract in her complaint or specified the particular contract or contract provision(s) that Defendant allegedly breached.[33]

Regarding Plaintiff's representation that she asserted a claim for withholding of insurance proceeds, Defendant argues that it had no obligation to provide insurance proceeds to Plaintiff until repairs were completed and Defendant inspected the property. Regardless, Defendant states that it concluded its inspections and disbursed funds to Plaintiff on January 2, 2018; therefore, the claim is without merit.[34]

Finally, with regard to Plaintiff's claim for personal injury damages, Defendant argues that it owes no general duty to Plaintiff; therefore, her claims cannot sound in tort and can only sound in contract.[35]

    2.    <u>Plaintiff's opposition</u>

First, Plaintiff opposes Defendant's motion and objects to the copies of the mortgage[36] and Loan Modification Agreement[37] attached to Defendant's motion based on

---

[32] Rec. Doc. 28-1, pp. 1-2. Defendant relies upon Paragraph 5 of the mortgage, attached to Defendant's motion as Exhibit "A". Rec. Doc. No. 28-1, pp. 2-3 (citing Rec. Doc. No. 28-2, pp. 7-8).
[33] Rec. Doc. 28-1, p. 7.
[34] Rec. Doc. No. 28-1, p. 9.
[35] Rec. Doc. No. 28-1, pp. 9-10.
[36] Rec. Doc. No. 28-2.
[37] Rec. Doc. No. 28-3.
52240

a "lack of identification and authentication."[38] Next, relying on the Loan Modification Agreement, Plaintiff argues that she has sufficiently set forth facts constituting a breach of contract claim.[39] Plaintiff argues Defendant breached the contract when it "misapplied funds which the Plaintiff had paid into her escrow account" and when Defendant "unreasonably withheld insurance proceeds."[40] Plaintiff agrees with Defendant that it is not required to obtain insurance; rather, Plaintiff clarifies, Defendant allegedly wasted escrow money by paying for two wind insurance policies. Plaintiff argues that a "plea of misapplication of escrow payments is sufficient to plead a claim of breach of contract."[41]

Regarding withholding of insurance proceeds, Plaintiff argues that her factual allegations are sufficient to set forth a claim against Defendant for "unreasonably withholding from the plaintiff insurance payments which her flood insurer has already disbursed."[42] Plaintiff relies upon a sentence of the mortgage to argue that Defendant has breached its contract with Plaintiff by failing to release the insurance proceeds to pay for repairs.[43]

Finally, Plaintiff characterizes her claims for personal injury damages as "tort claims of the Plaintiff"; however, she argues that her claims for "tort damages" are a result of a breach of contract "which is recoverable under Louisiana law."[44]

---

[38] Rec. Doc. No. 30, p. 1.
[39] Rec. Doc. No. 30, p. 4.
[40] Rec. Doc. No. 30, p. 5.
[41] Rec. Doc. No. 30, p. 5 (citing *Peters v. J.P. Morgan Chase Bank, N.A.*, 600 Fed.Appx. 220, 224 (5th Cir. 2015); *In re Rosetti*, 2008 WL 2559193 (Bankr., N.D. Tex. 2008)).
[42] Rec. Doc. No. 30, p. 7.
[43] Rec. Doc. No. 30, p. 7 (citing Rec. Doc. No. 28-2, p. 8: "Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by the Lender, shall be applied to restoration or repair of the property.").
[44] Rec. Doc. No. 30, p. 8.
52240

### 3. Defendant's reply

Defendant responds that Plaintiff's opposition was untimely, and the mortgage and Loan Modification Agreement are "properly before the Court". Defendant argues that Plaintiff's opposition is untimely under Local Rule 7(f),[45] and the agreements are "matters of public record" and, therefore, can be considered on a Rule 12(b)(6) motion.[46]

Defendant argues that Plaintiff is changing her argument from the misapplication of escrow funds to the procurement of duplicative or inappropriate policies.[47] Defendant also argues that Plaintiff has not alleged or shown a valid breach of fiduciary duty claim as the complaint does not reflect this alleged cause of action or any writing that confers the fiduciary duty upon Defendant.[48]

Defendant contends that, even if it withheld insurance proceeds from Plaintiff, this did not amount to the breach of any agreement because Defendant had no obligation under the mortgage to provide the funds from the policy that it obtained without a showing that repairs were completed.[49]

---

[45] Defendant simply raises the untimeliness of Plaintiff's opposition without further comment or argument. Defendant is correct. Plaintiff's opposition was untimely filed. Local Rule 7(f) states that all response memoranda are to be filed within twenty-one days of service of the motion. Defendant's motion was filed on November 21, 2018. Therefore, Plaintiff's opposition was due on or before December 12, 2018. Instead, Plaintiff filed her opposition on January 4, 2019. The record is void of any evidence of Plaintiff seeking leave of court or seeking an extension of time to respond to Defendant's motion. The Court cautions Plaintiff that such practices are not condoned. All parties are to abide by the applicable rules and timeline in place. There are procedural mechanisms available to address situations when an extension of time is necessary. While Plaintiff breached the rules in untimely filing her opposition, the Court is not aware of any prejudice or harm incurred by any party. Therefore, in the interest of justice, the Court will consider Plaintiff's untimely opposition memorandum.
[46] Rec. Doc. No. 34, p. 1 (citing *Morlock, LLC v. Bank of America, N.A.*, 573 Fed. Appx. 364, 366 n. 3 (5th Cir. 2014)(citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)); *see also, Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000)).
[47] Rec. Doc. No. 34, p. 2 (citing *Woodside v. Pacific Union Financial, LLC*, No. 17-12191, 2018 WL 1419349, *3 (E.D. La. Mar. 22, 2018)).
[48] Rec. Doc. No. 34, p. 4 (citing *LaBauve v. JP Morgan Chase Bank, N.A.*, No. 17-259, 2018 WL 1125660, at *3-5 (M.D. La. Mar. 1, 2018)).
[49] Rec. Doc. No. 34, p. 4 (citing Rec. Doc. No. 28-2, p. 8, § 5).
52240

Finally, Defendant argues that Plaintiff's tort claim must fail as Plaintiff admits that her alleged damages flow from an alleged breach of contract, not a breach of a general duty owed to all persons under tort law. Defendant avers that Plaintiff has not alleged that Defendant owes any general duty outside of the mortgage relationship; therefore, Plaintiff has no cause of action in tort.[50]

## II.   LAW AND ANALYSIS

### A.   Rule 12(c) and 12(b)(6) Legal Standard

Defendant moves for Judgment under Rule 12(c) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is evaluated on the same basis as a motion to dismiss under Rule 12(b)(6).[51]

In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[52] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[53] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state

---

[50] Rec. Doc. No. 34, p. 5 (citing *Harrison v. Gore*, 27,254 (La.App. 2 Cir. 8/23/95); 660 So.2d 563, 568).
[51] *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).
[52] *In re Katrina Canal Breeches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[53] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
52240

a claim to relief that is plausible on its face.'"[54] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of this entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[55] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[56] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[58] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[59] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[60]

### B. Defendant's Exhibits

When considering a Rule 12(b)(6) motion, the courts are limited to reviewing the pleadings and any exhibits attached thereto. However, the Fifth Circuit Court of Appeal

---

[54] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).
[55] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555 (internal citations and brackets omitted) (hereinafter *Twombly*).
[56] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter *Iqbal*).
[57] *Id.* at 678.
[58] *Id.*
[59] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099 at *2 (S.D. Tx. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[60] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
52240

has provided a narrow exception to this rule whereby a "court may treat documents attached to a motion to dismiss as a part of the pleadings without converting the motion into one for summary judgment if the complaint refers to the documents, and the documents are central to the plaintiff's claim."[61]

Defendant attaches and relies upon the Mortgage, proof of its recording in the mortgage records of Livingston Parish, Louisiana and the Loan Modification Agreement.[62] Plaintiff also refers to the mortgage in her *First Amended Complaint*.[63] Plaintiff's cause of action at issue in this motion is one of breach of contract; therefore, it is necessary for the Court to consider the contract(s) at issue. Although district courts primarily look to the allegations found in the complaint in determining whether to grant a Rule 12(b)(6) motion, there are other sources the courts may consider.[64] District courts may consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."[65] As the mortgage is referenced by Plaintiff in her complaint, is integral to her claim, and is a part of the public mortgage record, the Court will consider the mortgage on Defendant's Rule 12(c) motion.

The same holds true for the Loan Modification Agreement.[66] Plaintiff refers to the Loan Modification Agreement in the *First Amended Complaint* and relies upon it in support

---

[61] *St. Paul Fire & Marine Ins. Co. v. Bd. of Comm'rs of the Port of New Orleans*, 2012 WL 1118419, at *2 (E.D. La. Apr. 2, 2012) (citing *Lone Star Fund v. (U.S.) v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010)).
[62] Rec. Doc. Nos. 28-2, 28-3.
[63] Rec. Doc. No. 9, p. 2, ¶¶ 5-6.
[64] *Meyers v. Textron, Inc.*, 540 Fed. Appx. 408, 409 (5th Cir. 2013) (unpublished) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)).
[65] *Meyers*, 540 Fed. Appx. at 409 (citing *Tellabs*, 551 U.S. at 322).
[66] Rec. Doc. No. 28-3.
52240

of her claims.⁶⁷ While there is no evidence that the Loan Modification Agreement is a part of the public record, the Court may consider this contract as it is referenced and integral to the claims and motion at issue.⁶⁸ The Court notes that the copy of the Loan Modification Agreement attached to Defendant's motion is of poor quality and a portion of page two of the agreement is blank and/or illegible, hence while the Court is willing to consider the Loan Modification Agreement on this 12(c) Motion, it is of little practical usefulness.

### C. Breach of Contract Claim

"A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."⁶⁹ "The central elements of a breach of contract action are the existence of a contract, a party's breach thereof, and damages."⁷⁰ Stated differently, the elements of a cause of action for breach of contract are: "(1) the obligor's undertaking of an obligation to perform (the contract), (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."⁷¹

In her *First Amended Complaint*,⁷² Plaintiff alleges that: she "enter[ed] into a Loan Modification Agreement;"⁷³ the "Loan Modification Agreement between the parties was executed and came into effect;"⁷⁴ and "since the finalization of the Loan Modification

---

⁶⁷ Rec. Doc. No. 9, pp. 2, 5, ¶¶ 8-11, 28.
⁶⁸ *Meyers, supra.*
⁶⁹ La. C.C. art. 1906.
⁷⁰ *Favrot v. Favrot*, 2010-0986 (La.App. 4 Cir. 2/9/11), 68 So.2d 1099, 1108-09 (quoting *Hercules Machinery Corp. v. McElwee Bros., Inc.,* 2002 WL 31015598, at *9 (E.D. La. Sept. 2, 2002)).
⁷¹ *Denham Homes, L.L.C. v. Teche Federal Bank*, 182 So.3d 108, 118 (La.App. 1 Cir. 9/18/15).
⁷² Rec. Doc. No. 9.
⁷³ Rec. Doc. No. 9, p. 2, ¶ 8.
⁷⁴ Rec. Doc. No. 9, p. 2, ¶ 9.
52240

Agreement in 2011," Defendant has failed to furnish Plaintiff with monthly mortgage statements and escrow statements.[75] A review of the Loan Modification Agreement reveals that Monique L. Hibbs and Wells Fargo Bank, N.A., and Mortgage Electronic Registration Systems, Inc. are the parties to the agreement.[76] While the Court notes that the parties do not rely upon the same contract, (Defendant solely argues the terms of the mortgage,[77] and Plaintiff argues mainly the Loan Modification Agreement),[78] neither party argues that there was no contract. Plaintiff's complaint reflects sufficient pleading of a contract.

Additionally, Plaintiff alleges that, "as a result" of Defendant's actions, Plaintiff has "had to fund her own repairs to the property for over a year" and "has had to live in a trailer outside of her home while she waits [for] the funds necessary to finish the repair of her home."[79] She also alleges that she and her minor child "have become ill due to exposure to mold and other toxic substances while the property remains in a ruined condition."[80] She specifically seeks "actual damages, statutory damages, penalties, attorney's fees, legal interest and the costs of this litigation."[81] Plaintiffs' *First Amended Complaint* contains damages allegations with sufficient specificity.

The issue before the Court is whether Plaintiff has sufficiently plead the *breach* of a contract.

---

[75] Rec. Doc. No. 9, p. 5, ¶ 28.
[76] Rec. Doc. No. 28-3, p. 1.
[77] Rec. Doc. No. 28-1, pp. 2-3.
[78] Rec. Doc. No. 30, pp. 1, 4-8.
[79] Rec. Doc. No. 9, p. 5, ¶ 25.
[80] Rec. Doc. No. 9, p. 5, ¶ 26.
[81] Rec. Doc. No. 9, p. 6, ¶ 30.
52240

The *First Amended Complaint* reveals that Plaintiff pled that, as a "condition of the Loan Modification Agreement," Defendant "required" Plaintiff to pay into an escrow account an amount "sufficient to pay wind, homeowner's and flood insurance;"[82] Defendant "failed to obtain other comparable flood insurance for her";[83] that "Defendant had purchased two separate wind insurance policies on the property … and paid the monthly premiums on both policies out of the escrow account;"[84] Defendant "deducted from the plaintiff's monthly mortgage payments an excessive amount of fees and costs … without justification and without disclosing to the plaintiff exactly what was being withheld or escrowed and for what purpose";[85] and Defendant has "continuously failed to furnish the plaintiff with monthly mortgage statements and escrow statement[s]."[86]

Plaintiff does not specifically aver that Defendant "misapplied" the escrow payments, quote the specific terms of any contract, or allege that Defendant "breached" a contract. However, Plaintiff pleads that the Loan Modification Agreement, a contract, obligated Plaintiff to pay an amount into an escrow account that was sufficient to cover payment for specific types of insurance policies and that Defendant deviated from that obligation and "failed" to obtain flood insurance and purchased two wind policies instead. When viewed in the light most favorable to Plaintiff and taking the allegations as true, the face of the complaint shows Plaintiff has plead a plausible claim for breach of the Loan Modification Agreement.

---

[82] Rec. Doc. No. 9, pp. 2-3, ¶ 11.
[83] Rec. Doc. No. 9, p. 3, ¶ 16.
[84] Rec. Doc. No. 9, p. 4, ¶ 18.
[85] Rec. Doc. No. 9, p. 5, ¶ 27.
[86] Rec. Doc. No. 9, p. 5, ¶ 28.
52240

Defendant counters by pointing to specific terms and conditions in the mortgage, just as the defendants in *Shamrock Assoc. Ind., L.L.C. v. Fid. Nat. Prop. And Cas. Ins. Co.*[87] and *Woodside v. Pacific Union Financial, LLC*[88] argued,[89] attempting to explain that it was not obligated to obtain insurance at all and it certainly was not obligated to obtain particular types of policies or amounts of coverage.[90] However, Defendant fails to address the terms of the Loan Modification Agreement[91], the later-dated contract which Plaintiff identifies in her *First Amended Complaint* as the agreement that created the obligation allegedly breached and what, if any, rights and responsibilities arise thereunder.

The primary issue at this stage of the proceedings is not whether the Plaintiff will ultimately prevail, but whether the substantive nature of the allegations raised in the complaint are such that the Plaintiff is entitled to offer evidence to support her claims.[92] It would be inappropriate for this Court to dismiss Plaintiff's complaint pursuant to Rule 12(c) unless it appears beyond doubt that Plaintiff can prove no set of facts in support of

---

[87] *Shamrock Assoc. Ind., L.L.C. v. Fid. Nat. Prop. And Cas. Ins. Co.*, 2006 WL 6927866 (E.D. La. Nov. 2, 2006).
[88] *Woodside v. Pacific Union Financial, LLC*, 2018 WL 1419349 (E.D. La. Mar. 22, 2018).
[89] Defendant relies upon *Shamrock Assoc. Ind., L.L.C. v. Fid. Nat. Prop. And Cas. Ins. Co.* Rec. Doc. No. 28-1, p. 8, n. 39. In *Shamrock*, the *only* contract at issue was the mortgage. *No second contract was raised as potentially altering the governing terms of the agreement* as Plaintiff does here with the Loan Modification Agreement. While GE's argument in *Shamrock* and the mortgage in *Shamrock* were identical to Defendant's argument and the mortgage in this matter, the real issue in *Shamrock* was that no insurance had been obtained because GE was not obligated to do so. Here, Defendant obtained insurance, and then argued that it does not matter what, if any, insurance it obtained because it did not have to do so in the first instance. Likewise, in *Woodside v. Pacific Union Financial, LLC*, the arguments by the defendant and mortgage language were identical to those of Defendant here. However, in *Woodside*, there was *no second contract raised in argument.* Also, the issue in *Woodside* was whether the defendant was in breach of the notions of good faith and fair dealing by paying a grossly inflated amount for the insurance policy it elected to obtain with the escrow funds.
[90] Rec. Doc. No. 28-1, pp. 7-9.
[91] Defendant fails to address the Loan Modification Agreement and the Court is unable to discern the terms and conditions of the Loan Modification Agreement due to the poor quality and incompleteness of the document.
[92] *Jones v. Geninger*, 188 F.3d 322, 324 (5th Cir. 1999).
52240

her claim which would entitle her to relief.[93] The Court cannot be certain that Plaintiff cannot prove facts in support of her claim which would entitle her to relief; therefore, Defendant's motion is denied with regard to Plaintiff's breach of contract claim.[94]

### D.     Withholding of Insurance Proceeds Claim

Plaintiff argues that she states a claim against Defendant for withholding insurance proceeds. "Withholding insurance proceeds" is typically plead as a cause of action against an insurance company for acting in "bad faith" in violation of Louisiana statutory law.[95] Plaintiff's complaint is void of any reference to or allegation of Defendant's actions in "bad faith" and/or in violation of Louisiana state law. In fact, Plaintiff simply states in one sentence that Defendant allegedly "refused to release that check."[96] No cause of action is identified, described, or pled. No additional factual allegations are pled.

In argument, Plaintiff quotes one sentence from the mortgage agreement, contending that it obligated Defendant to pay the proceeds for repairs. However, Plaintiff's argument does not ameliorate her failure to plead. Also, Defendant agrees with

---

[93] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[94] The Court notes that the parties' arguments may be more appropriate for summary judgment pursuant to Rule 56. *See, e.g., Highland Capital Management, L.P. v. Bank of America, Nat. Ass'n,* 698 F.3d 202, 206-09 (5th Cir. 2012) (where in reviewing a district court's dismissal of a breach of contract claim under Rule 12(b)(6), the Fifth Circuit considered the matter based on the allegations in the complaint and interpreted in favor of the plaintiff (at 207) and compared the arguments on the terms of the contract and intent of the parties to cases at the summary judgment stage, (at 209); the Fifth Circuit found that the plaintiff "has stated a plausible claim for relief against [the defendant] for breach of contract.... Thus, the district court erred in dismissing for failure to state a claim." *Highland*, 698 F.3d at 210.).
[95] Louisiana law provides that insurance companies who are in "bad faith" are liable for penalties under two separate statutes, La.Rev.Stat. § 22:1892 and La.Rev.Stat. § 22:1973. *R.L. Lucien Tile Co., ex. rel. Cage v. American Sec. Ins. Co.,* 2008–1190, pg. 7 (La.App. 4 Cir. 3/11/09); 8 So.3d 753, *citing* La.Rev.Stat. § 22:1892 and La.Rev.Stat. § 22:1973. § 22:1892 provides that a failure to make ... payment" in a timely fashion, "when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty." La.Rev.Stat. § 22:1892(B)(1). When the insurer violates Section 22:1892 by tendering partial payment when the failure to tender the full payment is found to be "arbitrary, capricious, or without probable cause," the penalty is "fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs." *Id.*
[96] Rec. Doc. 9, p. 5, ¶ 24.
52240

Plaintiff that the insurance proceeds were for repairs and that the full disbursement of the insurance proceeds has been made, rendering Plaintiff's argument moot. Defendant explains, with support from the mortgage agreement, that it was not obligated to disburse proceeds without first having the opportunity to inspect the claim and be satisfied of due and diligent repair. Until the investigation and due diligence is satisfied, Defendant argues that it is not potentially liable to Plaintiff for improperly "withholding" insurance proceeds. This is correct under the law.[97]

The Court finds that Plaintiff has not plead a plausible claim for relief for withholding insurance proceeds, and any claim for "withholding insurance proceeds" is dismissed.

### E. Personal Injury Damages Claim

Plaintiff alleges in her *First Amended Complaint* that she sustained personal injury damages as a result of the actions of Defendant.[98] All allegations of Defendant's actions in the *First Amended Complaint,* as set forth above, allegedly arose out of the contractual relationship of the parties. In her opposition, however, Plaintiff suggests that she is entitled to personal injury damages arising out of her "tort claims."[99]

"When a party has been damaged by the conduct of another arising out of a contractual relationship, the party may have two remedies, a suit in contract or a suit in tort, and he may elect to recover his damages under either of the two actions."[100] Where "a cause of action arises from breach of a promise set forth in contract, the action is '*ex*

---

[97] *See Sanderson v. Shelter Mut. Ins. Co.,* 2015 WL 7162511, *2 (W.D. La. Nov. 13, 2015)(when an investigation is ongoing, an insurer is protected by statutory law and jurisprudence in withholding payment until the investigation is complete).
[98] Rec. Doc. No. 9, p. 5, ¶ 26.
[99] Rec. Doc. No. 30, p. 8.
[100] *TMA Leasing, Inc. v. Vacuum Truck Sales & Service, LLC*, 2016 WL 3351011, at *2 (M.D. La. June 15, 2016) (citing *Corbello v. Iowa Prod.*, 02-0826, p. 32 (La. 2/25/03), 850 So.2d 686, 708, quoting Federal Ins. Co. v. Ins. Co. of North America, 262 La. 509, 263 So.2d 871, 872 (1972)).
52240

*contractu,*' but where it arises from a breach of duty growing out of contract, it is '*ex delicto.*'"[101] "Thus, the main distinction between an action on a contract and a tort action is that the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons."[102]

As set forth above, Plaintiff has alleged a contractual relationship with Defendant and has alleged damages "as a result" of Defendant's actions in alleged breach of the contractual obligations owed to Plaintiff. It is unclear to what "tort claim" or cause of action Plaintiff now refers. The *First Amended Complaint* contains no reference to any claim based in tort. In fact, there is no pleading of "negligence" or "duty" owed or breached. Plaintiff's allegations do not sound in tort and solely sound in contract. Plaintiff has failed to plausibly plead a tort cause of action upon which relief may be granted, and any ostensible tort claims are dismissed.

---

[101] *TMA Leasing, id.* at *2 (citing *Certain Underwriters at Lloyd's, London v. Sea-Lar Mgmt.*, 00-1512 (La.App. 4 Cir. 5/9/01), 787 So.2d 1069, 1974).
[102] *TMA Leasing, id.* at *2 (citing *Certain Underwriters at Lloyd's,* 787 So.2d at 1075, citing *Ridge Oak Development, Inc. v. Murphy*, 94-0025 (La.App. 4 Cir. 6/30/94), 641 So.2d 586).
52240

### III. CONCLUSION

Accordingly, Defendant's *Motion for Judgment on the Pleadings*[103] is **DENIED** with respect to Plaintiff's breach of contract claim. Defendant's motion is **GRANTED** with respect to Plaintiff's claim for withholding insurance proceeds and Plaintiff's tort claims for personal injury damages, and these claims are dismissed.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana on July 2, 2019.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[103] Rec. Doc. 28.
52240